**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**SHERRY FRANKE, Individually**
**And as Special Administratrix of**
**THE ESTATE OF KENNETH FRANKE,**
**Deceased; and KALOB FRANKE**                                 **PLAINTIFFS**

**vs.**                                   **CASE NO.: 4:20-CV-1310-BRW**

**THE CITY OF LITTLE ROCK;**
**DEVON COLCLOUGH, Individually and**
**In her Official Capacity; KEITH HUMPHREY,**
**Individually and in His Official Capacity'**
**MAYOR FRANK SCOTT, JR., Individually**
**And in his Official Capacity;**
**THE MUNICIPAL LEAGUE VEHICLE**
**PROGRAM; and John Does 1-10**                             **DEFENDANTS**

**BRIEF IN SUPPORT OF CITY DEFENDANTS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Separate Defendants, Devon Colclough ("Officer Colclough") individually and in her official capacity; Keith Humphrey ("Chief Humphrey"), individually and in his official capacity; Mayor Frank Scot Jr., individually, and in his official capacity; and City of Little Rock, Arkansas ("City"); collectively known as ("City Defendants"); respectfully come before this honorable court, by and through their attorneys, Thomas M. Carpenter, City Attorney, and Alexander J. Betton, Chief Deputy City Attorney, and for their Brief in Support of their Motion for Summary Judgement state:

**<u>Introduction</u>**:

On August 19, 2019, Officer Colclough began her career as a Little Rock Police Department ("LRPD") officer by beginning rookie school at the LRPD training academy. (*SUMF 1*). She graduated in January of 2020, and for the next few month trained with several Field Training Officers ("FTO"). (*SUMF 7*). In August of 2020, Officer Colclough was a Probationary Police Officer ("PPO") and her training reached the point where she no longer patrolled her sector with an FTO.

In the late afternoon of August 21, 2020, Officer Colclough was working a traffic accident, when she responded to a call from LRPD dispatch that there was a forgery in progress at the Centennial Bank located at 9712 N. Rodney Parham Rd. (*SUMF 18*).   Officer Colclough was the first officer to arrive at the bank and was told by the bank teller that the suspects were in the drive through.   She knew through dispatch that they were in a black Chevrolet Malibu.   She drove her patrol vehicle to the drive thru and parked in front of the suspects at an angle.   She activated her emergency lights and the suspects reversed out of the drive thru stall and fled. (*SUMF 19*).   The Malibu exited the bank parking lot and turned left on to Satterfield Drive; it came to a stop at the corner of Southedge Drive and Northwick Court and allowed the passenger to exit the vehicle; the suspect vehicle turned left at the stop sign and headed north on Northwick Court.   Northwick Court came to a dead end at a cul-de-sac, and the Malibu traveled east on Northgate Drive.   The Malibu then turned south onto Reservoir Road.   Officer Colclough followed the Malibu south on Reservoir road, and the Malibu drove through the red traffic signal at Reservoir Road and N. Rodney Parham.   The Malibu traveled east on N. Rodney Parham and Officer Colclough maintained pursuit at a distance. (*SUMF 20*)

As Officer Colclough neared the intersection of Brookside and N. Rodney Parham Road the Malibu crossed over into westbound traffic on N. Rodney Parham Road and had a head-on collision with a Honda Accord driven by Kenneth Franke with Kalob Franke as a passenger.   Once the driver of the Malibu collided with Mr. Franke, Mr. Franke's Honda Accord spun around and the Malibu hit the Chevrolet Equinox driven by Joshua Via before rolling in a grassy area.   (*SUMF 20*).   The driver of the Malibu was identified as Timothy Dockery Jr. ("Mr. Dockery").   (*SUMF 22*).   At the time Mr. Dockery's Malibu collided with Mr. Franke's Accord Mr. Dockery was travelling at 69.6 miles per hour; his brakes were not engaged, but he'd taken his foot off of the accelerator five (5) seconds prior. (*SUMF 21*).   Mr. Dockery died at the scene of the accident due

to the injuries he sustained in the head on collision, and MR. Franke died sometime thereafter. Kalob Franke was severely injured.  (*SUMF 22*)

The LRPD policy that governs pursuits is General Order ("G.O.") 302. *(SUMF 8)*. Pursuant to subsection 14 of G.O. 302, (a) "a formal review of all pursuits will be conducted by the officer's Chain of Command and the Training Division. (b) The purpose of the review is to determine if: (1) The pursuit was necessary and within Departmental Policy; (2) There are training needs to be considered; and (3) Any policy changes need to be considered.  (*SUMF 23*).  This pursuit was reviewed by Officer Colclough's chain of command.  Sgt. Allison Walton found that "the pursuit lasted for two minutes and twelve seconds, and travelled a distance of 1.3 miles…Probationary Police Officer Devon Colclough was not negligent in the accident…The suspect vehicle was over 100 yards ahead of PPO Colclough…Her presence did not push the driver of the suspect vehicle to cross into incoming traffic causing a collision."  Sgt. Walton noted that it was PPO Colclough's first pursuit and became a "teaching moment," she found PPO Colclough to be in compliance with G.O. 302 and suggested she be exonerated.  Lt. James Wheeler also noted that it was Officer Colclough's first pursuit, but that it was "reasonable and within department policy."   Lt. Wheeler noted that it was an opportunity to further train Officer Colclough, and he exonerated her of a violation of G.O. 302.  Captain Miller concurred with Sgt. Walton and Lt. Wheeler, and noted that there were some training points that came to light, but that he felt that they "did not rise to the level of a policy violation.  Assistant Chief Haskins and Chief Humphrey concurred.  (*SUMF 24*).  As such, and being that this was Officer Colclough's first independent pursuit as an LRPD officer, the LRPD went over the video of the August 21, 2020, pursuit with her, and discussed the pursuit in relation to G.O. 302 and its requisite subsections. (*SUMF 25, 26*).

In November of 2020, Sherry Franke, as the Special Administrtrix of the Estate of Kenneth Franke, Deceased; and Kalob Franke ("Franke") filed suit against the City of Little Rock; Officer Colclough (Individually and Officially); Chief Humphrey (individually and officially); and Mayor

Scott (individually and officially).  Franke brings four main counts against the City Defendants. Count one (1) is a civil rights claim under 42 U.S.C. § 1983, it claims that "Kenneth and Kalob Franke were entitled to equal protection of the laws and to the privileges and immunities of a citizen under the Fourteenth Amendment.[1]"  This Count hints that the 2017 and 2020 versions of G.O. 302 were/are unconstitutional,[2] and it affirmatively asserts a failure to train allegation against the City Defendants[3].  A pattern and practice allegation is not formally plead in this count however paragraph 64 comes close enough to pleading it that the City Defendants will treat it as plead.

Count II pleads allegations under the Arkansas Civil Rights Act ("ACRA").  Under this count Franke pleads violations of various provisions of the Arkansas Constitution.  She pleads alleged violations of: equal protection (Article 2 § 3); due process of law (Article 2 § 8); cruel and unusual punishment (Article 2 § 9); punishment without trial (Article 2 § 10); and unreasonable search and seizure (Article 2 § 15).  Count III is a state law claim for negligence claiming liability under the doctrine of respondeat superior.  Finally Count IV is also a state law tort claim for Outrage under the doctrine of respondeat superior.  This brief will first address qualified immunity in respect to the individual claims against Officer Colclough, Chief Humphrey and Mayor Scott, and municipal liability and the state law claims thereafter.

The City Defendants respectfully submit that there are no genuine issues with respect to any material facts in this case and that they are entitled to summary judgment as to all of Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

---

[1] Compl. ¶ 61
[2] Compl. ¶ 68-70
[3] Compl. ¶ 71

## II. Argument

### A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Moyle v. Anderson,* 571 F.3d 814, 817 (8th Cir. 2009). Plaintiff may not rely solely on the allegations in his pleadings. He must set out specific facts showing a genuine issue for trial. *Fowler v. Crawford,* 534 F.3d 931, 940 (8th Cir. 2008).

Although a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party, it is not required to "accept unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004). Plaintiff must produce probative evidence sufficient to demonstrate a genuine issue for trial. *Davenport v. Univ. of Ark. Bd. of Trustees,* 553 F.3d 1110, 1113 (8th Cir. 2009).

### B.    Qualified Immunity

Officer Colclough and Chief Humphrey are sued in their individual capacities, and with respect to those claims, qualified immunity shields law enforcement officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *LaCross v. City of Duluth,* 713 F.3d 1155, 1157 (8th Cir. 2013); *Joseph v. Allen,* 712 F.3d 1222, 1226 (8th Cir. 2013). This "clearly established" standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "'reasonably ... anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012) (citing *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)). Under this objective legal reasonableness standard, courts may not delve into the officers' subjective motivations for their actions. *Allen,* 712 F.3d at 1226. Qualified

immunity allows officers to make reasonable errors and protects all but the plainly incompetent or those who knowingly violate the law. *Id.*

A court engaged in a qualified immunity inquiry uses a two-step process. *LaCross* at 1157-58. The questions are whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right and whether that right was clearly established at the time of the defendant's alleged misconduct. *Id.* The Court has the discretion to decide which question should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Defendants submit that the Court, in making a decision on qualified immunity on this claim, should first address whether a constitutional violation occurred before moving to the question of whether the constitutional right was clearly established. Thus, in the qualified immunity analysis of this claim, the initial inquiry is whether the pursuit amounted to a Fourthteenth Amendment violation. In making that determination, the Court must examine whether Officer Colclough and Chief Humphrey's actions were objectively reasonable in light of the facts and circumstances confronting him without regard to his underlying intent or motivation. *Nance v. Sammis,* 586 F.3d 604, 610 (8th Cir. 2009). Officer Colclough and Chief Humphrey are entitled to qualified immunity because the facts viewed in a light most favorable to the Franke do not yield a constitutional violation. Further, they did not violate clearly established law.

### i.    Officer Colclough

Franke cannot make a prima facie case of a 14th amendment due process allegation against Officer Colclough because Officer Colclough's vehicle did not collide with Kenneth Franke's vehicle at 69.6 miles per hour. Mr. Dockery's Malibu did, and he did so in a private capacity. In order for liability to attach to Officer Colclough Mr. Dockery would have to be a governmental actor. It is undisputed that he was a suspected felon. He was fleeing from the custody of Officer Colclough, so it is clear that he was not acting as an agent of the government for purposes of the Fourteenth Amendment. "Section 1983 secures most constitutional rights from infringement by

governments, not private parties." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). Mr. Dockery's act of fleeing from the custody of Officer Colclough and the LRPD was a private act. "[P]rivate conduct, no matter how egregious, discriminatory, or harmful, is beyond the reach of § 1983." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007).

Officer Colclough's actions on August 21, 2020, did not affected Kenneth and Kalob Franke, the contemporaneous evidence in this case, City Defendant's Exhibit G shows that Mr. Dockery was significantly ahead of Officer Colclough when the collision happened. The undisputed facts show that he was traveling a 69.6 miles per hour and never attempted to brake. Those egregious actions took the life of Kenneth Franke and seriously injured Kalob Franke, however, those actions were not coerced, significantly encouraged (overtly or covertly), controlled, delegated to, or entwined with Officer Colclough's pursuit. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001). Mr. Dockery independently and privately made the decision to flee the custody of Officer Colclough, and the fault and liability for the horrible results of that private decision are Mr. Dockery's alone.

Officer Colclough did not violate Kenneth and Kalob's 14th amendment rights when she pursued Mr. Dockery. There is, therefore, no need to address the second step of the two-step qualified immunity analysis of whether there was a clearly established right. However, even if a violation of a constitutional right occurred, a point that Officer Colclough does not concede, she is entitled to qualified immunity because the right was not clearly established under the circumstances

> "Fr a right to be clearly established, its contours must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, —— U.S. ——, 138 S.Ct. 1148, 1153, 200 L.Ed.2d 449 (2018) (per curiam), *quoting Plumhoff v. Rickard*, 572 U.S. 765, 778–79, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014). Failing to "identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment" is often fatal to a claim outside of obvious cases. *White v. Pauly*, ——

– U.S. ——, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam). *See id.*, *citing United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (explaining a "general constitutional rule" can give fair warning where it applies "with obvious clarity to the specific conduct in question"). A case need not be "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam), *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).  *Moore-Jones v. Quick*, 909 F.3d 983, 985 (8th Cir. 2018)

The United States Supreme Court has undertaken the question of whether or not liability can be attached to a Police officer based on a vehicular pursuit.  However, unlike in Officer Colclough's case, the officer struck the decedent instead of a private individual.  In *County of Sacramento, et al. v. Teri Lewis and Thomas Lewis, personal representative of the Estate of Philip Lewis*, 523 U.S. 833 (1999), the United States Supreme Court held, "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."

The facts of the aforementioned case were that an officer was responding to a call of a fight in progress, and when he arrived he saw a motor cycle approaching him at a high rate of speed. The officer turned on his blue lights and yelled for the motorcycle to stop, but the driver of the motor cycle maneuvered the bike between the police cars and kept going.  The officer turned on his emergency lights and pursued the motorcycle through a residential neighborhood at speeds reaching 100 miles per hour.  The chase lasted seventy-five seconds and 1.3 miles with the motorcycle weaving in and out of oncoming traffic.  The officer followed at a distance of 100 feet. The pursuit ended with the motorcycle tipping over when the driver tried to make a sharp left turn. The officer slammed on his brakes and the driver of the motorcycle was able to make it out of the way but the passenger was struck by the officer and propelled 70 feet away and was pronounced dead on the scene.  *Id*. at 836, 837.

The Plaintiff's in the above-styled case, like Franke, brought an action against the officer pursuant to 42 U.S.C. § 1983, under the Fourteenth Amendment for a deprivation of the decedent's

substantive due process to the right to life.  Like Franke, the Plaintiff relied heavily on their belief

that the officer violated departmental policy.[4]   The Court framed the issue saying:

> We have emphasized time and again that "[t]he touchstone of due process is
> protection of the individual against arbitrary action of government," *Wolff v.
> McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974),
> whether the fault lies in a denial of fundamental *846 procedural fairness,
> see, *e.g., Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556
> (1972) (the procedural due process guarantee protects against "arbitrary takings"),
> or in the exercise of power without any reasonable justification in the service of a
> legitimate governmental objective, see, *e.g., Daniels v. Williams,* 474 U.S., at 331,
> 106 S.Ct., at 664 (the substantive due process guarantee protects against
> government power arbitrarily and oppressively exercised). While due
> process protection in the substantive sense limits what the government may do in both its
> legislative, see, *e.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14
> L.Ed.2d 510 (1965), and its executive capacities, see, *e.g., Rochin v.
> California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), criteria to identify
> what is fatally arbitrary differ depending on whether it is legislation or a specific
> act of a governmental officer that is at issue. *Id.* at 845–46

The Court analyzed cases dealing with allegations of abusive executive action noting  that,

"in *Collins v. Harker Heights,* for example, we said that the Due Process Clause was intended to

prevent government officials " ' "from abusing [their] power, or employing it as an instrument of

oppression." ' " 503 U.S., at 126, 112 S.Ct., at 1069 (quoting *DeShaney v. Winnebago County

Dept. of Social Servs.,* 489 U.S., at 196, 109 S.Ct., at 1003 (in turn quoting *Davidson v.

Cannon,* 474 U.S., at 348, 106 S.Ct., at 670–671).

The court found one example of such an abuse in *Rochin v. California*, 342 U.S. 165

(1952).  However that case involved the forced pumping of an individual's stomach, and that act

offended the suspect's due process and the *Rochin* court found that the acts "shocked the

conscious…and violated the decencies of civilized conduct[5]."  The County of Sacramento Court

---

[4] Id. at 838 see also Exhibit C pg. 49-52

[5] See, *e.g., Breithaupt v. Abram,* 352 U.S. 432, 435, 77 S.Ct. 408, 410, 1 L.Ed.2d 448 (1957) (reiterating that conduct
that " 'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair
play and decency" would violate substantive due process); *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088,
89 L.Ed.2d 251 (1986) (same); *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697
(1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the
conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty' ") (quoting *Rochin v. California,*

reiterated that, "[i]n the intervening years we have repeatedly adhered to *Rochin 's* benchmark." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47, (1998).

The Court then turned its analysis toward police officers faced with pursuits.  It noted that,

> "Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance." *Id.,* at 320, 106 S.Ct., at 1084; cf. *Graham v. Connor,* 490 U.S., at 397, 109 S.Ct., at 1872 ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"). A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders. To recognize a substantive due process violation in these circumstances when only midlevel fault has been shown would be to forget that liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the governed." *Daniels v. Williams,* 474 U.S., at 332, 106 S.Ct., at 665.  *Id.*at 853, 854.

County of Sacramento, demonstrates that Officer Colclough is entitled to qualified immunity because she did not violate clearly established law.  In fact, it has been established law since 1998, that a law enforcement officer engaged in a pursuit that ends in a fatality does not violate the Fourteenth Amendment based on his/her split-second decision to engage in the pursuit.

Officer Colclough is entitled to a Judgement as a matter of law.  She is entitled to qualified immunity because she did not violate Kenneth or Kalob Franke's constitutional rights.  If there is

---

*supra,* at 172, 72 S.Ct., at 209–210, and *Palko v. Connecticut,* 302 U.S. 319, 325–326, 58 S.Ct. 149, 151–152, 82 L.Ed. 288 (1937)). Most recently, in *Collins v. Harker Heights, supra,* at 128, 112 S.Ct., at 1070, Cty. of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S. Ct. 1708, 1717, 140 L. Ed. 2d 1043 (1998)

precedent that places the constitutional question beyond debate, as seen in *County of Sacramento*, that precedent is in Officer Colclough's favor.

### ii.    Chief Humphrey

Chief Humphrey is entitled to qualified immunity for the allegations made against him in his individual capacity because the Plaintiff has failed to establish any constitutional claims against him.  It is undisputed that Chief Humphrey did not participate in the pursuit of Mr. Dockery either as a pursuing officer or a supervisor.  Considering the facts of this case in a light most favorable to the Plaintiff, the only potentially viable allegations against Chief Humphrey would be his concurrence with Officer Colclough's chain of command that she did not violate G.O. 302, and his amending G.O. 302 to add Ark Code Ann § 27-50-308, Reckless Driving.

First, concurring with the chain of command is not demonstrative of a failure to train, nor deliberate indifference to unconstitutional misconduct.  The undisputed facts show that the pursuit was Officer Colclough's first independent pursuit as an LRPD officer and after investigating it her chain of command recommended and administered additional training.  (*SUMF 25, 26*)  Franke's pattern and practice allegations and failure to train allegations cannot exist alongside that undisputed material fact.  Officer Colclough's additional training is evidence of the LRPD further engaging and its PPO on G.O. 302 through real life experience.  It is the essence of hands on training, and in order for Franke to show that Chief Humphrey was deliberately indifferent she would need to show that he had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action. *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992).

### C.    Municipal Liability

In Paragraph 64 of the Complaint, Franke claims that the "Defendants directly or with deliberate indifference, under color of law, approved and/or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of officers.  By failing to enact proper procedures to discourage pursuits for non-violent property damage crimes, or, alternatively, by failing to

terminate the pursuit when it was clear that the pursuit was being conducted in a violation of policy." This language seems to marry a pattern and practice claim and an unconstitutional policy claim under *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 691 (1978). As such, the City Defendants will address both.

Pursuant to 42 U.S.C. §1983 any person acting under color of state law who subjects another to the deprivation of constitutional rights shall be liable to the injured party. A local government such as the City is considered a "person" subject to Section 1983 liability. *Scheeler v. City of St. Cloud, Minn.,* 402 F.3d 826, 832 (8th Cir. 2005). "A plaintiff may establish municipal liability under **§** 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.' " *Ware v. Jackson County,* 150 F.3d 873, 880 (8th Cir.1998) (quoting *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 691 (1978)).

In order for Franke to prove that G.O. 302 is an unconstitutional policy she must show that it is in violation of federal law. *Brossart v. Janke*, 859 F.3d 616, 627 (8th Cir. 2017). Plaintiff's primary claim concerning G.O. 302, is that the 2016 version that authorized pursuits only if the "suspect has committed or is about to commit a felony which involves the use or threat of physical force or violence against any individual" yielded fewer pursuits and fewer car accidents than the 2017 and 2020 versions[6]. Plaintiff's allegation is a policy complaint and not a constitutional violation. It is not a violation of federal law for a municipality to allow its police officers to pursue a suspect suspected of committing a felony, violent or non-violent. It certainly is not a violation of federal law for a municipality to allow its police officers to pursue individuals who recklessly drive and drag race in an officer's presence. Franke cannot show that any of the versions of G.O.

---

[6] See Ex. C pg. 28, ln. 7-16; pg. 29, ln. 8-11; pg. 37 ln. 20-25; pg. 38. Ln. 1-11

302 violate federal law, so in order to establish liability on behalf of the City of Little Rock she must show a pattern and practice of deliberate indifference to unconstitutional misconduct by the City's policy makers.

To prove that a custom exists, a plaintiff must prove (1) the existence of a continuing, widespread pattern of unconstitutional misconduct by employees; (2) deliberate indifference to or tacit authorization of such misconduct by the governmental entity's policymaking officials after notice to the officials of the misconduct; and (3) the custom was the moving force behind the constitutional violation. *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999). The prior pattern of unconstitutional conduct "must be so persistent and widespread so as to have the force and effect of law" and the pattern must have caused the plaintiff's alleged injury. *Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998); *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996).  Plaintiff must further show that City officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action. *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992).

i.      **Pattern and Notice.**

As previously stated in order for Franke to establish municipal liability she must first show the existence of a continuing, widespread pattern of unconstitutional misconduct by LRPD officers.  She cannot because she cannot show that any version of G.O. 302 was a violation of federal law.  All that she can show is that if a municipality restricts that amount of offenses that its police officers can pursue suspects behind it will yield fewer pursuits and fewer accidents.  That is not a constitutional issue, it is a policy issue.

ii.     **Deliberate Indifference.**

In addition to showing a "pattern of unconstitutional acts" by LRPD officers, Franke must show that Chief Humphrey and the City were "deliberately indifferent" to the unconstitutional misconduct.  First, Plaintiff will not be able to show deliberate indifference because she cannot

show a pattern of similar unconstitutional misconduct.  However, in the event that she could show a pattern, a point that the City and Chief Humphrey do not concede, the Supreme Court held in *Brown*, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. Of Cty. Comm'rs of Bryan Cty., Okl. V. Brown*, 520 U.S. 397, 398 (1997).  In essence she would have to show that Chief Humphrey, the policymaker for the LRPD at the time of Kenneth Franke's death and Kalob Franke's injury, was on notice of a pattern of unconstitutional misconduct and took no action to curtail it.

Plaintiff has only identified one other fatality due to a LRPD pursuit, and that occurred in 2015[7].  While Chief Humphrey had heard about this fatality it occurred nearly four years before his tenure began.  As such, this is not even deliberate indifference to a bad policy decision.  It is a decision made by Chiefs of Police in the furtherance of fighting crime.  Finally, the undisputed facts show that the LRPD has not been deliberately indifferent to G.O. 302, it was amended three times between March 9, 2016 and April 7, 2020.

### iii.    Failure to Train

Count one of the Complaint alleges that "it was also the policy and custom of the City of Little Rock to inadequately train and supervise its police officers, specifically including Defendant Colclough, thereby failing to adequately discourage further constitutional violations on the part of its police officers."  The Eighth Circuit has repeatedly held that a municipality cannot be liable for inadequate training (or supervision) when the officer involved did not violate a plaintiff's constitutional rights.  *See Veneklase v. City of Fargo*, 248 F.3d 738, 748 (8th Cir. 2001); *Olinger v. Larson*, 134 F.3d 1362, 1367 (8th Cir. 2000), and *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996).  City Defendants maintain that Officer Colclough did not violate Kenneth

---

[7] See Ex.C pg. 19, ln. 11-13; pg. 30 ln. 15-20.

and Kalob Franke's constitutional rights as set forth earlier in this brief, and therefore Plaintiff cannot hold the City liable for allegedly failing to supervise and train its officers.

Plaintiff cannot establish a failure to train claim. A city will be liable "only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.' " *Szabla v. City of Brooklyn Park, Minn.,* 486 F.3d 385, 392 (8th Cir. 2007).  The undisputed material facts in this case show that the City has not shown a deliberate indifference to the constitutional rights of its citizenry.  The facts establish that the LRPD emphasizes G.O. 302 and pursuit practice in the academy, and in the field with FTO's.  Further the undisputed material facts show that the LRPD further trained Officer Colclough after the pursuit that is the subject of this case.  (*See SUMF's 2, 6, 7, 12, 13, 16, 17, 26, and 29*).

With respect to training, a municipality may be liable for deficient policies regarding training police officers where: (1) the city's training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by a municipality; and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury.  *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).  It is necessary to show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in a violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

In *City of Canton*, the Supreme Court noted that an inadequate training claim could be the basis for § 1983 liability in limited circumstances. 489 U.S. at 387.  However, the Court indicated

that it was referring to a deficient program "necessarily intended to apply over time to multiple employees." *Canton*, 489 U.S. at 390. The Court elaborated on this standard in *Brown*:

> If a program does not prevent constitutional violations, municipal decision makers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortuous conduct by employers may establish the conscious disregard for the consequences of their action - the 'deliberate indifference' - necessary to trigger municipal liability. . . (internal citations omitted).   520 U.S. at 407.

The adequacy of law enforcement training policies has been examined in several cases. See *Andrews v. Fowler,* 98 F.3d at 1077 (training procedures for the department consisted of approximately two (2) weeks of on the job training with another officer followed by attendance at a police academy within one (1) year of the date of employment. Those who did not pass the academy training were not retained. The court found no reason to conclude that this training was constitutionally deficient); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998) (training provided the jailer consisted of on-the-job training for two and one-half (2 1/2) weeks by another jailer. He was also scheduled to attend a jailer training course, but the course was not scheduled to be held for another month. He had also begun a Jail Officers Training Correspondence Course. He had previously received CPR training and was recertified twice as a reserve officer. There was also evidence the jailer had been given a copy of the county's manual of policies, procedures and operations to read. The court refused to find the county liable on these facts); *Smith v. Watkins*, 159 F.3d 1137 (8th Cir. 1998) (the officer attended eight (8) weeks of police training classes while serving as an auxiliary officer in Detroit, Michigan, completed the Arkansas Law Enforcement Training Academy and received more than one hundred (100) hours of police training while serving as an auxiliary officer for the state of Arkansas. The Court found there was no basis for concluding that he was inadequately trained).

In *Parrish v. Ball,* 594 F.3d 993 (8th Cir. 2010), Hot Spring County, Arkansas was sued on the ground that the County failed to train a deputy sheriff who sexually assaulted the plaintiff

in that case. Although the deputy operated as a law enforcement officer, he received little to no training on how to properly serve in that capacity. The only training he received was one to two days of riding with the deputy whose job he was hired to fill.  In addition, although the deputy was given a policy manual, he was not required to read it, and, in fact, he never actually read it. He was scheduled to attend the Law Enforcement Training Academy, but had not done so at the time of the incident upon which the lawsuit was based.  In spite of the limited training, the Hot Spring County Sheriff permitted the deputy to work despite being almost completely unsupervised. The Eighth Circuit dismissed the failure to train claim and stated that even though the deputy should have been more properly trained on the "contents of the law," his intentional sexual assault of the plaintiff was too remote a consequence of such a failure to meet the rigorous causation standard necessary to hold the County liable.

The training found to be adequate in the cases cited above pales in comparison to the training received by Officer Colclough.  She attended the LRPD Training Academy after she was hired, completing 20 weeks of training for a total of 800 hours.  At the time, the State of Arkansas Commission on Law Enforcement Standards and Training required only 480 hours of training in order for an officer to be certified as a law enforcement officer.

The Training Academy is a state-certified school which provides instruction in various areas of law enforcement including, but not limited to, use of force, use of deadly force, the LRPD Rules, Regulations and General Orders, civil liability law, constitutional law, probable cause and the laws of arrest, search and seizure, domestic violence, aerosol defensive spray, building searches, handling abnormal or mentally ill persons, the Arkansas Criminal Code, cultural diversity, report writing, use of the side handle baton, juvenile laws and procedures, firearms training.

The training program followed by the City and the LRPD greatly exceeds the minimum standards required by the State of Arkansas.  The LRPD course of training is also far more

extensive than police training programs previously found to be acceptable by the Eight Circuit Court of Appeals.  Plaintiff has completely failed in meeting the burden of proof for a failure to train.

### iv.   Mayor Scott

Mayor Scott is entitled to a judgement as a matter of law in his individual and official capacity because Franke has failed show that he took any action that violated Kenneth and Kalob's constitutional rights.  She cannot show that G.O. 302 is an unconstitutional policy, or a pattern and practice of unconstitutional misconduct by LRPD officers.  Even if Franke could establish those elements she has failed to show that Mayor Scott in his individual or official capacity was deliberately indifferent toward them.  Mayor Scott is entitled to a judgement as a matter of law.

### D.   State Law Claims

### i.   ACRA

For all the reasons stated above in this brief the City Defendants are entitled to a judgement as a matter of law on Franke's ACRA claims.  Specifically, the LRPD Defendants are entitled to qualified immunity, and Franke cannot establish a constitutional violation out of an automobile accident that did not involve a state actor.

### ii.   Negligence/Outrage

Counts three and four of the Complaint fail because Officer Colclough is entitled to qualified immunity as briefed above.  Further, Franke claims that the City is liable under the doctrine of respondeat superior.  Yet, long-standing Supreme Court precedent has held that, "… a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a ***respondeat superior*** theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, (1978).  Further, A.C.A. 21-9-301 holds the

City Defendants, including Chief Humphrey and Officer Colclough, immune from Tort, "except to the extent that they may be covered by liability insurance[8].

### E.        Conclusion

What happened to Kenneth and Kalob Franke was tragic, but it was not the fault of officer Colclough, Chief Humphrey, Mayor Scott or the City of Little Rock.  It was the fault of Mr. Dockery.  This horrific vehicular accident did not yield a Fourteenth Amendment violation, it yielded a tort. The *County of Sacramento* court delineated between constitutional violations and tortious conduct saying, "we explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States," and in *Daniels v. Williams,* 474 U.S., at 332, 106 S.Ct., at 665, we reaffirmed the point that "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  Separate Defendants respectfully submit that there are no genuine issues with respect to any material facts and that each of Plaintiff's claims against them should be dismissed pursuant to Fed. R. Civ. P. 56.

<div style="margin-left:45%">

Respectfully submitted,

Thomas M. Carpenter
City Attorney

Alexander J. Betton #2009275
Attorney for Defendant
Office of the City Attorney
500 West Markham, Suite 310
Little Rock, Arkansas 72201\
(501) 371-4527
abetton@littlerock.gov

</div>

---

[8] The City of Little Rock participates in the Arkansas Municipal Leagues Vehicle Program and the limit on its policy is $25,000.  Program Details – Arkansas Municipal League (arml.org)